CT Corporation

**Service of Process Transmittal**
02/05/2015
CT Log Number 526528177

TO:   John Keohane, CFO
      GENEX Services, Inc.
      440 E Swedesford Rd Ste 3050
      Wayne, PA 19087-1839

RE:   **Process Served in New Mexico**

FOR:  Genex Services, LLC (Domestic State: PA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Jennifer Baca, Pltf. vs. Ace American Insurance Company, et al., Dfts. // To: Genex Services, LLC |
| **DOCUMENT(S) SERVED:** | Letter, Complaint, First Amended Complaint, Summons on First Amended Complaint, Return, Answer, Notice(s) and Receipt(s), Reply Envelope |
| **COURT/AGENCY:** | First Judicial District Court, Santa Fe County, NM<br>Case # D101CV201500010 |
| **NATURE OF ACTION:** | Insurance Litigation - Claim for policy benefits |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Santa Fe, NM |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 02/05/2015 postmarked: "Not Post Marked" |
| **JURISDICTION SERVED:** | New Mexico |
| **APPEARANCE OR ANSWER DUE:** | No later than 30 days from the date you are served with this summons (Document(s) may contain additional answer dates) |
| **ATTORNEY(S) / SENDER(S):** | M.J. Keefe<br>Keefe & Associates LLC<br>1400 Central Ave SE<br>Ste. 2000<br>Albuquerque, NM 87106<br>505-262-0000 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  Fed Ex 2 Day , 780172535794<br>Email Notification, Gordon Fabrizio gordon.fabrizio@genexservices.com |
| **SIGNED:**<br>**ADDRESS:** | C T Corporation System<br>123 East Marcy Street<br>Santa Fe, NM 87501 |
| **TELEPHONE:** | 360-357-6794 |

Page 1 of  1 / DR

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

**EXHIBIT 1**





Keefe & Associates LLC

505-262-0000
1400 Central Avenue SE
Suite 2000
Albuquerque, NM 87106
mjkeefe@keefe-lawfirm.com

To:

GENEX Services, LLC
c/o C T Corporation System
Registered Agent
123 E. Marcy
Santa Fe, NM 87501



CERTIFIED MAIL™

7011 1570 0002 0452 4957



**Keefe & Associates** LLC

505-262-0000
1400 Central Avenue SE
Suite 2000
Albuquerque, NM 87106
mjkeefe@theabqlawfirm.com

February 3, 2015

<u>**VIA CERTIFIED MAIL**</u>
7011 1570 0002 0452 4957

GENEX Services, LLC
c/o C T Corporation System
Registered Agent
123 E. Marcy
Santa Fe, NM 87501

RE:     *Jennifer Baca v. Ace American et al*
        Case No. D-101-CV-2015-00010

Dear Sir or Madam:

Enclosed are the following documents as to the referenced matter:

1.      Complaint for Damages for Personal Returns;

2.      1st Amended Complaint;

2.      Issued Summons on Amended Complaint;

3.      Answer form;

4.      Two copies of the Notice and Acknowledgment of Receipt of Summons and
        Complaint; and

5.      Postage prepaid return envelope.

Please submit the original signed, dated *Notice and Acknowledgment of Receipt of Summons and Complaint* in the enclosed self-addressed, stamped envelope to the US Postal Service by or before February 23, 2015 for delivery to this office by February 26, 2015.

Sincerely,

Prudy Brenkendorf, Legal Assistant
Keefe & Associates, LLC

Enclosures

DISTRICT COURT CLERK
1/2/2015 6:03:14 PM
STEPHEN T. PACHECO
Joan Chernoc

**FIRST JUDICIAL DISTRICT**
**COUNTY OF SANTA FE**
**STATE OF NEW MEXICO**

**JENNIFER BACA,**

      **Plaintiff,**

v.                            No. D-101-CV-2015-00010

**ACE AMERICAN INSURANCE**
**COMPANY, GALLAGHER**
**BASSETT SERVICES, INC.,**
**and MICHAEL RICHEY.**

      **Defendants.**

## COMPLAINT FOR BREACH OF CONTRACT, VIOLATIONS OF STATUTORY AND COMMON LAW, BAD FAITH, AND BREACH OF UNFAIR TRADES PRACTICES ACT

1.    Plaintiff Jennifer Baca ("Baca") is now, and was at all times material hereto, a resident of the County of Sandoval, New Mexico.

2.    Defendant Ace Property and Casualty Insurance Co. ("Ace") is a foreign corporation licensed by the State of New Mexico to transact insurance business and services in New Mexico.

3.    Defendant Gallagher Bassett Services, Inc. ("GB") is a foreign corporation registered to be an insurance administrator in New Mexico.

4.    At all times material hereto, Michael Richey ("Richey") was an agent for Ace and GB and upon information and belief, currently resides in Bernalillo County, New Mexico.

5.    Venue is proper in Santa Fe County, as defendant GB's designated agent for service of process, The Prentice-Hall Corporation System, Inc. is located in Santa Fe, NM, and defendant Ace's designated agent for service of process, the Superintendent of Insurance of New Mexico, is located in Santa Fe, New Mexico.

6.    This Court has jurisdiction over the parties and subject matter of this complaint.

7.    At all material times Ace and GB acted through their agents and employees, each acting within the scope and purpose of their agency or employment.

## FACTUAL ALLEGATIONS

8.    Baca was an independent contractor who leased trucks from Swift Transportation Inc., ("Swift") and drove a truck under a contract with Swift.

9.    Ace contracted with GB to administer the claims made under an occupational accident policy ("policy") sold by Ace to Swift.   GB adjusted the claims presented by or on behalf of Baca under her certificates.

10.    Swift purchased an occupational accident policy from Ace to provide coverage for Swift's independent truckers.   Swift was the insured under the policy.   Swift withheld premium payments from the independent truckers' income to pay for the drivers' certificates.   Swift acted as an agent of Ace, collecting premiums, notifying Ace of claims and coordinating the initial medical care needed by injured truckers.

11.    Independent truckers, like Baca, did not receive a certificate or an explanation of coverage after they paid for the coverage.   Baca received an enrollment form that explained the basic benefits under the certificate.   The enrollment form makes no mention of the requirement that Baca be eligible for Social Security disability benefits to be eligible for Permanent Total Disability benefits.

12.    In 2012, Baca was required to pay for two separate occupational accident insurance policies from Ace, and the payments were deducted by Swift from her income.   The occupational accident policies provide medical and lost income benefits for drivers who become disabled.

13.    Baca was physically injured on or about November 4, 2012, while hitching a trailer to her tractor as part of her work duties.

14.    Baca was injured on a Sunday and reported her injury to the Swift Transportation dispatcher that day.

15.    Swift made the initial injury notification to Ace, and Ace or Swift directed Baca to return to Albuquerque before receiving treatment.

16.    Ace and GB have chosen the physicians Baca has seen for treatment of the medical conditions related to the November 4, 2012 injury.

17.    Ace or Swift delayed treatment of Baca, insisting she return to Albuquerque and told her not to go to the emergency room on the day she was injured, and the following week, despite her

request to go to an emergency room.

18.     Baca applied for disability and medical benefits under the terms of her certificates.   Baca asked for all benefits payable to her.

19.     Baca became disabled as a result of the injuries suffered on November 4, 2012.

20.     Baca has cooperated with Ace and GB, and complied with the requests made by Ace and GB for information and medical examination.

21.     Those requests include going to Concentra Medical Center, attending an Independent Medical Examination ("IME"), going to the USA Pain clinic, working with assigned medical care managers, seeing other medical providers chosen by GB and Ace, and visiting a psychologist chosen by GB and Ace.

22.     Ace wrote the terms and conditions in the certificates, and GB is aware of the terms and conditions of the certificates.

23.     GB has administered the claim handling for Baca and is knowledgeable about the terms and conditions of the certificates.

24.     The certificates provide for payment of a daily income benefit amount when Baca is disabled, and the benefits are $100 per day, each day of the month for the first two years.

25.     Ace and GB have not paid the full amount of income benefit owed to Baca, and have often delayed payment of benefits (more than 20 separate occasions).

26.     Ace and GB are aware that Baca's disability will not end in the near future, but they refused to pay Baca a monthly check for temporary disability benefits, except for one occasion.

27.     GB had the ability to pay on a monthly basis, but chose to continue to make payments weekly.

28.     The delays in payment and the benefits not being paid caused hardship for Baca.

29.     Baca has complained to GB and Ace about the late payments, but the delays in getting payments to Baca continued over time.

30.     Baca cooperated with the request from defendants that she attend a medical examination (IME) by a consulting physician that was not treating her in August 2013.

31.     The examining physician hired by defendants recommended Baca visit a psychologist and receive ongoing counseling.   Richey, a medical case manager, began working with Baca after the IME, and coordinated treatment for Baca.

32.     Baca was directed to a psychologist chosen by Ace, GB and Richey at a date and time set by GB and Richey.   Richey assured Baca that Ace and GB would make payment for the services provided by the psychologist.

33.     Baca had the understanding that defendants would pay for the treatment with the psychologist under the terms of the certificate, and that the visit had been pre-approved.

34.     Richey scheduled and attended the appointment with the psychologist.

35.     Richey told Baca that she was required to comply with the treatment recommendations by the IME doctor retained by GB and Ace.

36.     Prior to the visit with the psychologist, Richey told Baca that Ace and GB would pay for the treatment recommended by the IME doctor, and that he would make sure the care was received.

37.     Neither GB nor Ace paid for the psychologist visit.

38.     Baca could not afford to follow up with the counseling sessions on her own.

39.     Ace and GB knew that Baca could not afford any follow up sessions.

40.     Baca has not received the psychological care she needed to treat the physical injuries suffered on November 4, 2012.

41.     Defendants have refused to pay the psychologist, and Richey told Baca that Ace and GB refused to approve further payment for future psychological services.

42.     Baca has been contacted by the psychologist's office to make payment since defendants have refused to pay the bill.

43.     Baca would not have gone to see the psychologist without pre-approval because she could not afford the expense.

44.     Ace and GB have chosen the treating physicians for Baca, and according to Richey, would be making arrangements for Baca to get the care recommended in the IME report.

45.     The treating physicians chosen by Ace and GB have prescribed pain medicine and topical pain cream to treat Baca's physical injuries.

46.     Baca has submitted the prescriptions to pharmacies, and notified GB of the prescriptions submitted.

47.     At times, Ace and GB have claimed that prescriptions had not been submitted to them for approval.

4

48.     Ace and GB received communications from doctors, the case manager, the pharmacies, and Baca, indicating insurance approval was needed for treatments and prescriptions.

49.     Neither Ace nor GB approved many of the prescriptions made by the medical providers they chose.

50.     A physician has recommended physical therapy to treat Baca's related neurological problems.

51.     Ace and GB have not approved some of the physical therapy recommended by the doctor they chose, and did not coordinate the care for Baca.

52.     A referral for hyperbaric oxygen therapy was made for Baca by GB and Ace's treating physicians.

53.     Defendants have denied requests for benefits for the hyperbaric oxygen therapy.

54.     The denial of prescriptions and care by Ace and GB has resulted in Baca's condition getting worse.

55.     Nerve blocks recommended by the IME report have not been approved or paid for by Ace or GB.   The care has not been coordinated by GB or Ace, or their medical case managers.

56.     Baca's injuries required early intervention and aggressive treatment that she did not receive, resulting in permanent damage.

57.     Ace and GB maintained strict control over Baca's medical care.

58.     By controlling the medical physicians, the treatment, and the medication that Baca has received, Ace and GB have further contributed to the damages suffered by Baca, and Baca has, more likely than not, lost her chance at a successful recovery.

59.     On August 6, 2014 Baca requested a copy of her claim file from GB.

60.     GB responded on August 6, 2014 and refused to provide a copy of parts of the file that were not medical records.

61.     GB told Baca that it would not give her a copy of her file because the records were "part of our (GB's) work product."

62.     In August, GB told Baca that her medical benefits would only be paid for two years.

63.     GB did not tell Baca about the language in the certificate allowing for medical benefits to be provided after the end of two years.

64.     In August 2014 Ace and GB hired a second case manager, Anita Kelly ("Kelly").

5

65.   Kelly told Baca that she would explain how the certificate worked, and went with Baca to a medical appointment.

66.   Kelly did not coordinate all the additional care needed by Baca.

67.   Kelly had not read the certificate, and just forwarded some explanations provided by GB to Kelly.

68.   Ace and GB have not provided Baca with explanations for most of the denials of medical benefits requested, or the reasons why the recommended treatment has not been scheduled and provided.

69.   Baca could not understand the reasons for denials of benefits when GB refused to send the parts of the file that were not medical records.

70.   Until the end of the first two years, GB and Ace did not tell Baca the reasons they have denied medical benefits to her.

71.   At the end of the first two years, GB and Ace have denied medical benefits and explained that the reason for denial is the lapse of two years.

72.   The certificate says that the medical benefits are to be paid for the first two years, and that after the first two years the medical benefits are to be paid for treatment as long as Baca is receiving treatment related to the injuries suffered on November 4, 2012.

73.   Baca needs additional medical care for injuries suffered on November 4, 2012.   The care is for medical problems that have continued and are related to her original injury.

74.   The certificate indicates that the disability benefits will be paid until the injured beneficiary turns sixty-five (65) or until that person dies.

75.   The certificate provides disability income benefits for the first two years under a temporary disability benefit provision.

76.   After two years, the certificate says that Baca must be approved for Social Security disability benefits prior to getting permanent disability benefits from Ace.

77.   A primary purpose of the certificate is to provide disability income benefits when the disability is related to the injuries sustained by Baca on November 4, 2012.

78.   A primary purpose of the medical benefits provisions of the certificate is to pay for medical care related to injuries sustained by Baca on November 4, 2012.

6

79.     Ace has failed to honor the terms of its contract and has repudiated the whole contract with respect to ongoing medical benefits and permanent disability benefits as will be further developed herein.

80.     Public policy dictates that a party to an insurance contract cannot rely on un-disclosed pre-conditions as a bar to benefits. According to the certificate Baca was required to apply for Social Security disability ("SSDI") benefits in order to receive permanent disability benefits.

81.     Baca was denied SSDI because she had not accrued the necessary number of credits by paying in minimum amounts over the last decade to ensure her eligibility for her contractual benefits.

82.     Ace failed to provide Baca with a copy of the certificates while she was paying premiums for many years.   Ace did not communicate to Baca that she would be required to receive benefits from Social Security to be eligible to receive permanent disability income benefits after the first two years.

83.     A party to an insurance contract cannot deny benefits when it has not disclosed important benefit qualification conditions.

84.     Ace has repudiated this policy, indicating that Ace will not comply with the certificates' terms.   Ace has stated it will not pay for any additional medical benefits because a two year limit has expired, and will not pay any additional disability income benefits because Baca does not qualify for Social Security disability income.

85.     The policy certificates contain ambiguous language.   All ambiguous provisions are to be construed in favor of Baca.

## COUNT I
## BREACH OF CONTRACT

86.     Plaintiff incorporates all paragraphs of this Complaint into Count I as if fully set forth herein.

87.     Baca paid for two separate certificates underwritten by Ace.

88.     The certificates sold by Ace to Baca through Swift are written insurance contracts.

89.     Ace and GB breached the contract with Baca, by refusing to pay medical benefits after November 12, 2014 despite certificate provisions indicating that she is entitled.   The purpose of

the certificates is to provide medical and income benefits to the disabled insured.

90.     Ace wrote the terms of the certificates.

91.     In every insurance contract in the State of New Mexico there exists an implied covenant of good faith and fair dealing.

92.     The insurance contract sold to Baca, a New Mexico resident, must comply with the insurance laws of the State of New Mexico, including the public policy of New Mexico.

93.     GB administered the certificates and stopped payment of benefits owed to Baca.

94.     Ace is responsible for the administration of the policy by GB.

95.     Ace breached the covenant of good faith and fair dealing owed to Baca.

96.     Baca is an intended third-party beneficiary of any agreement made between Ace and GB for the administration of the certificates.

97.     Ace is liable for the actions taken by GB that violate the rights of Baca.

98.     Other than being injured and unable to work, Baca was unaware of any conditions precedent to receiving benefits under both certificates.

99.     Prior to being injured, Baca did not receive certificates showing her that she was required to participate in the Social Security disability system to receive disability benefits after two years from the date of disabling injuries.

100.    The certificates show Swift as the policyholder and "Certain Independent" drivers as intended insureds.

101.    Ace has repudiated the terms of the contract for disability benefits by denying Baca permanent disability payments because she does not qualify for Social Security disability (but not on any medical grounds).

102.    The contract, as written, requires an insured to pay into Social Security as a requirement to receive permanent disability benefits.

103.    After November 2014, Ace has repudiated the medical benefits portion of the contract by refusing to pay future medical benefits for medical care related to the injuries sustained on November 4, 2012.   The certificate provides that Ace will pay medical benefits after the first two years if Baca is under the ongoing care of a doctor for a medical condition related to the initial injury.

104.    Ace has paid disability income benefits under only one of the two certificates.

105.    The failure to pay disability benefits under the second certificate is made in bad faith and is a breach of that contract.

106.    The system of requiring drivers to pay for more than one certificate and limiting benefits to only one daily income benefit violated the duty to act in good faith and fair dealing.

107.    As a direct and proximate result of the breach of contract and the breach of the covenant of good faith and fair dealing, Baca has incurred damages.

## COUNT II
## VIOLATIONS OF STATUTORY INSURANCE AND COMMON LAW BAD FAITH

108.    Plaintiff incorporates all the paragraphs of this Complaint into Count II as if fully set forth herein.

109.    The relationship between an insured and an insurance company is a special relationship.

110.    The relationship between an insured like Baca and an insurance company's administrator is a special relationship.

111.    Ace and GB have a duty to fairly and reasonably investigate the claims of an insured, and failure to do so does not permit them to deny a claim due to lack of information or one-sided information.

112.    Ace and GB cannot misrepresent facts or certificate provisions and an insurer has an affirmative duty to disclose benefits and coverages that may apply to a claim.

113.    Ace cannot receive premiums for two certificates, and then only pay disability benefits under one certificate.

114.    The actions of Ace and GB constitute unfair insurance trade practices and violations of the common law of the State of New Mexico by acting only in its own self-interest and with reckless disregard for Baca's rights.

115.    Ace and GB should have administered the certificates so as to continue making income payments to Baca because Ace and GB have no evidence that Baca can perform any occupation.

116.    Ace and GB sent Baca to an IME doctor that GB chose, required Baca to comply with the IME doctor's treatment recommendations, and hired a case manager to ensure Baca was complying with the treatment recommendations.

9

117.     Then Ace and GB unreasonably ignored the treatment recommendations, denied certain medical benefits that were recommended, and failed to coordinate the care needed by Baca.

118.     Ace and GB denied Baca permanent disability benefits on the grounds that she was denied SSDI benefits.

  a.   This denial was not based upon medical science or Baca's ability to work, but completely upon an undisclosed certificate provision Baca could not have known of because she never received the certificates prior to being injured.
  b.   Baca never received a certificate of coverage from Ace, despite having paid for several certificates: a breach of the insurer's duty to communicate and provide coverage information to its insured.
  c.   Baca never received any benefit from the second certificate she was required to purchase, without any explanation by Ace or GB as to why.
  d.   Ace and GB did not provide the necessary instructions and assistance to Baca to ensure she could comply with the certificate terms and, prior to her claim, never provided the policy to Baca to make her aware of the certificate terms.
  e.   The failure to provide a copy of the certificate is one way to limit benefits to the independent truckers.

119.     Ace and GB should have performed a reasonable investigation of Baca's permanent disability status, but instead relied on SSDI's non-medical determination as grounds to deny certificate income benefits.

120.     Ace and GB failed to conduct an investigation into Baca's permanent disability status after the two years of temporary disability ended.

121.     Ace and GB have a good faith obligation to construe any ambiguous policy provision in a way that favors Baca.

122.     Ace's policy should be strictly construed against it.

123.     Ace and GB never provided an explanation of benefits to Baca for the denial of medical services until after two years had elapsed.

124.     Ace and GB know how important the benefits of the policy are to an insured who becomes disabled.

125.     Ace and GB should have considered Baca's actual employment prospects before denying her total permanent disability benefits.

126.     Ace and GB payment of benefits does not relieve it of any bad faith conducted in the handling of the claim.

10

127.   Ace and GB have denied Baca benefits and have compelled her to bring suit, thus fixing the rights of the parties at the time of filing this action.

128.   Ace and GB cannot rely on reasons created or discovered after suit is filed to justify its prior conduct.

129.   Ace and GB can only rely on the reasons for the denial of benefit communicated to Baca.

130.   Ace failed to pay disability benefits owed under a second certificate bought by Baca.

131.   Ace and GB unreasonably, willfully, and recklessly violated the New Mexico Unfair Insurance Trade Practices Act, §§ 59A-16-1 et seq. N.M.S.A. 1978 and New Mexico common law.

132.   Upon information and belief, Ace knew of the representations made by GB to claimants like Baca, and that many such representations were false.

133.   Ace is liable for the actions of GB, its agent, in violation of New Mexico law.

134.   As a direct and proximate result of Defendants' violation of the New Mexico Insurance law and common law bad faith, Baca has incurred damages.

## COUNT III
## VIOLATION OF UNFAIR PRACTICES ACT

135.   Plaintiff incorporates all the paragraphs of this Complaint into Count III as if fully set forth herein.

136.   Ace and Swift led Baca to believe she would receive benefits for all the medical and income benefits she was entitled to if she was injured and could not work.

137.   Ace and GB have violated the Unfair Practices Act by:

    a.   Taking advantage of Baca's lack of knowledge, ability, and experience.
    b.   Selling the certificates to Baca that would not supply benefits under the terms of the certificates and therefore engaging in an unfair and deceptive trade practice.
    c.   Forcing Baca to purchase more than one certificate even though Ace intended to pay benefits of only one certificate.
    d.   Not paying any benefits on the second certificate for which Baca paid premiums for years.
    e.   Engaging in unconscionable trade practices by failing to provide Baca with a copy of the certificate at the time of sale.
    f.   Ace has failed to deliver the quality of product that Baca believed she would receive.
    g.   Ace has failed to provide any benefits from the second certificate.
    h.   Ace and GB denied payment to Baca for medical costs recommended by the medical providers that Ace and GB picked; Ace and GB hired a case manager to ensure Baca

complied with the IME doctor's treatment recommendations, but then ignored the recommendations and refused to pay; Ace and GB repudiated the contract for medical benefits by denying payment after the two year time-period expired despite Baca still being under the care of the doctors for the same injuries.

i.  Ace paid disability benefits on one certificate only; prior to being injured, Ace never informed Baca she had to be eligible to receive Social Security disability benefits to receive disability benefits after two years from the date of injury. Ace and GB unreasonably stopped paying benefits based on the SSDI determination that was not related to Baca's physical condition, but the lack of payment into the Social Security system over the last decade. Ace repudiated the contract for disability benefits by refusing to pay Baca.

j.  Ace and GB's actions and decisions caused the breach of the unfair trade practices. GB acted on Ace's behalf, and made decisions that resulted in Baca receiving less in benefits than she was entitled to receive.

k.  Ace and GB have willfully engaged in unfair, deceptive, and unconscionable practices.

138.  As a direct and proximate result of Defendants' violation of the New Mexico Unfair Practices Act, Baca has incurred damages.

## COUNT IV
## MISREPRESENTATION BY MICHAEL RICHEY

139.  Plaintiff incorporates all the paragraphs of this Complaint into Count IV as if fully set forth herein.

140.  At all times material hereto, Defendant Richey was an agent of Ace and GB.

141.  Baca attended an IME ordered by GB on behalf of Ace on or about August 9, 2013, with a provider chosen by GB.

142.  Dr. Vichick of New Mexico Orthopaedics, the doctor chosen by GB, performed the IME and provided a report detailing a plan of treatment and indicated Baca was unable to perform her work as a tractor-trailer operator and would remain unable to do so for the foreseeable future.

143.  Dr. Vichick recommended as a plan of treatment that:

a.  Baca receive pain blocks;
b.  Baca's over-the-counter medications continue;
c.  Baca be referred to a certified pain specialist;
d.  Baca be referred to a hand specialist for fabrication of a custom splint;
e.  Baca continue hand therapy;
f.  Baca attend psychological evaluation and counseling;
g.  Baca receive trial pain blocks in the radial nerve of her forearm;
h.  Possible surgical intervention be considered.

144.   Richey informed Baca that he was hired as a medical case manager to ensure Dr. Vichick's recommended plan of treatment was provided to Baca and complied with by Baca.

145.   Richey told Baca that he would make sure she received the medical benefits needed to battle her injuries.

146.   Richey failed to help carry out the plan.   It took several months to set up a psychological appointment, and Baca was not directed to appropriate doctors to receive the care recommended by Dr. Vichick.

147.   Richey misrepresented his role to Baca, telling her he was going to help her to obtain the medical benefits that she needed.

148.   Baca relied on Richey's representations.

149.   Richey told Baca that she needed approval of treatment before getting medical appointments and prescriptions.

150.   Richey failed to help Baca obtain the benefits promised and Baca did not receive much of the IME recommended treatment.

151.   Baca was never given the reasons for the failure to receive benefits or why Ace and GB did not pay the psychologist.

152.   Baca never received the splint from the hand specialist, over-the-counter pain medications previously approved and paid for, hand therapy, ongoing counseling, or surgical intervention.

153.   Baca also relied on Richey's misrepresentations by attending an evaluation with a psychologist setup by GB and Richey, for which Ace and GB subsequently refused to pay.

154.   Baca could not afford continued counseling with a psychologist as ordered by Dr. Vichick. Ace and GB refused to pay for any further psychological treatment.

155.   Richey, Ace and GB knew that Baca could not afford continued counseling with a psychologist as recommended by Dr. Vichick.

156.   Richey misrepresented the certificate terms and did not explain any of the denial of benefits, in writing or otherwise. Richey told Baca that certain medically needed services and prescriptions were not approved.

157.   Ace and GB's hiring of Richey caused delay for Baca when she needed medical care.

13

158.   As a direct and proximate cause of Richey's misrepresentations, Baca incurred damages.

## COUNT V
## MISRPRESENTATION BY ACE

159.   Plaintiff incorporates all the paragraphs of this Complaint into Count V as if fully set forth herein.

160.   Baca paid Ace for two separate and distinct certificates for disability coverage with the expectation that she would receive the benefit of both certificates.

161.   Ace knew Baca paid for two certificates.

162.   Baca made a claim for benefits, expecting to receive all the benefits from the certificates she paid premiums for.

163.   Baca understood that she would receive benefits from the certificates if she was injured and could not work.

164.   Ace never paid any disability benefits under one of the certificates.

165.   Ace intentionally did not process a claim on the second certificate.

166.   Baca was induced to believe she would be covered by both of the certificates she paid for.

167.   Ace failed to tell Baca that Ace would only pay under one certificate if Baca became disabled.

168.   A misrepresentation may be based on an omission, and Ace has failed to process Baca's benefits under the second certificate.

169.   The payment of two premiums created the expectation that disability income benefits would be paid under both certificates.

170.   Another omission was made with regard to medical benefits.   Ace told Baca of a deadline of two years for medical benefits, that no medical benefits are available under the certificate more than two years after her injury.

171.   Baca was expecting to receive medical benefits that would be provided as long as she was unable to return to work.   The enrollment form for the certificates indicates that there is a $1,000,000 medical/dental benefit, and makes no mention of a two year limit.

172.   Baca received a copy of the certificate after she was injured.

173.   Even after delivery of the certificate, Ace and GB notified Baca of a two year limit of

14

medical benefits.

174.    Through GB, Ace told Baca that her medical benefits would end in November 2014.

175.    Through Kelly, Ace and GB told Baca that her medical benefits would end in November 2014.

176.    On information and belief, GB did not show Kelly the language of the certificate, and omitted telling Kelly about the contract provision extending medical benefits past two years.

177.    Ace and GB clearly have shown that they intended to deny benefits to Baca in direct contradiction to the language of the certificate.

178.    Ace has clearly shown that it intended to sell two certificates to Baca, but only intended to pay income benefits under one certificate.

179.    There is no reason to sell a second certificate to Baca if she could only receive the benefits from one certificate.

180.    The misrepresentations through direct statements and omissions were made intentionally by Ace.

181.    Baca reasonably relied upon the misrepresentations to her detriment.

182.    As a direct and proximate cause of Ace's misrepresentations, Baca incurred damages.

## COUNT VI
## CONTRACTUAL PROVISIONS THAT
## VIOLATE PUBLIC POLICY SHOULD BE REFORMED

183.    Plaintiff incorporates all the paragraphs of this Complaint into Count VI as if fully set forth herein.

184.    The intent of an accidental disability and dismemberment contract is to provide benefits to age sixty-five (65) or until the death of the beneficiary where permanent disability has been proven.

185.    Baca is not able to receive benefits from the Social Security Disability Administration, not because she was not disabled, but because she had not amassed the necessary amount of payment credits over the ten years of work.

186.    Ace never informed Baca that she had to qualify for Social Security disability to be eligible to receive permanent disability benefits under the compulsory certificates she paid for.

15

187.    Until she was injured Baca was never provided a copy of the two certificates she paid for and was not provided a certificate until well after she made a claim, creating an impossibility to perform on her part without any notice or ability to conform her actions to ensure her eligibility for benefits.

188.    Ace has structured its policy to make Ace a secondary payer to Social Security disability payments in contravention of federal public policy and claims an offset of benefit payments by Ace for any government benefits paid to Baca.

189.    Ace has also made eligibility for Social Security disability benefits a necessary precondition for permanent contractual disability benefits—a hidden requirement Baca could not have reasonably contemplated or anticipated at any time before the denial of benefits on that basis.

190.    Ace has created an impossibility of performance issue by invoking the determination of an undisclosed, unrelated and foreign process (SSDI benefits) as grounds for denial of contractual benefits.

191.    Ace further conditions payment of permanent disability benefits upon a final disability IME, functional capacity evaluation, and vocational evaluation—all required in addition to the SSDI determination.

192.    Ace has made clear, through communications to Baca, that she would still be denied permanent disability benefits because she does not qualify for Social Security disability.

193.    The policy should be reformed to provide for benefits due to the failure of Ace to disclose important contract terms prior to Baca becoming disabled.

194.    The exclusionary clause excluding permanent disability benefits when a driver does not qualify for Social Security disability is against public policy, especially when not disclosed until after the injury leading to disability.

195.    Public policy requires reformation to prevent manifest injustice.   This exclusionary clause should be deleted from the certificate.

## COUNT VII
## DAMAGES, COSTS, & FEES

196.    Plaintiff incorporates all the paragraphs of this Complaint into Count VII as if fully set forth herein.

16

197. Plaintiff has incurred the following damages:

    a. Loss of permanent disability income benefits;
    b. Loss of disability benefits from the second certificate;
    c. Loss of medical benefits;
    d. Emotional distress damages, and other compensatory damages;
    e. Compensatory damages for losing the opportunity to aggressively treat her injuries;
    f. Bad faith damages for violation of statutory law and common law;
    g. Unfair practices act damages including treble damages;
    h. Punitive damages as a result of the gross negligent, wanton, reckless and willful conduct of Ace and GB;
    i. Pre-trial and post-trial interest as allowed by law; and
    j. Attorney fees as allowed under §§ 39-2-1, 57-12-10 and 59A-16-30 N.M.S.A. 1978.

**WHEREFORE**, Plaintiff prays that this Court enter judgment against Defendants for the actions described in this Complaint, and for such further relief as is just and proper.

Respectfully Submitted:

/s/*M.J. Keefe*_____
M.J. Keefe
Keefe & Associates LLC
1400 Central Ave. SE, Suite 2000
Albuquerque, NM 87106
(505) 262-0000
mjkeefe@theabqlawfirm.com

/s/ *Josh Eden*_____
Josh E. Eden
Eden Law Office, LLC
1400 Central Ave. SE, Suite 2000
Albuquerque, NM 87106
edenlawoffice@gmail.com

*Attorneys for Plaintiff*

DISTRICT COURT CLERK
1/27/2015 2:36:00 PM
STEPHEN T. PACHECO
Cynthia Romero

**FIRST JUDICIAL DISTRICT**
**COUNTY OF SANTA FE**
**STATE OF NEW MEXICO**

**JENNIFER BACA,**

      **Plaintiff,**

**v.**                                                    **No. D-101-CV-2015-00010**

**ACE AMERICAN INSURANCE**
**COMPANY, GALLAGHER**
**BASSETT SERVICES, INC.,**
**GENEX SERVICES, LLC,**
**and MICHAEL RICHEY.**

      **Defendants.**

### PLAINTIFF JENNIFER BACA'S FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT, VIOLATIONS OF STATUTORY AND COMMON LAW, BAD FAITH, AND BREACH OF UNFAIR TRADES PRACTICES ACT

1. Plaintiff Jennifer Baca ("Baca") is now, and was at all times material hereto, a resident of the County of Sandoval, New Mexico.

2. Defendant Ace Property and Casualty Insurance Co. ("Ace") is a foreign corporation licensed by the State of New Mexico to transact insurance business and services in New Mexico.

3. Defendant Gallagher Bassett Services, Inc. ("GB") is a foreign corporation registered to be an insurance administrator in New Mexico.

4. At all times material hereto, Michael Richey ("Richey") was a resident of New Mexico and currently resides in Bernalillo County, New Mexico.

5. Richey was an employee of Genex Services, Inc., a foreign corporation ("Genex") that, upon information and belief, was merged into Genex Services, LLC. Genex was agent for Ace and GB, and is licensed by the State of New Mexico to transact business and provide services in New Mexico with CT Corporation System as a registered agent for service of process in Santa Fe, New Mexico.

1

6.   Venue is proper in Santa Fe County, as defendant GB's designated agent for service of process, The Prentice-Hall Corporation System, Inc. is located in Santa Fe, NM, and defendant Ace's designated agent for service of process, the Superintendent of Insurance of New Mexico, is located in Santa Fe, New Mexico.

7.   This Court has jurisdiction over the parties and subject matter of this complaint.

8.   At all material times Ace and GB acted through their agents and employees, each acting within the scope and purpose of their agency or employment.

## FACTUAL ALLEGATIONS

8.   Baca was an independent contractor who leased trucks from Swift Transportation Inc., ("Swift") and drove a truck under a contract with Swift.

9.   Ace contracted with GB to administer the claims made under an occupational accident policy ("policy") sold by Ace to Swift. GB adjusted the claims presented by or on behalf of Baca under her certificates.

10.  Swift purchased an occupational accident policy from Ace to provide coverage for Swift's independent truckers. Swift was the insured under the policy. Swift withheld premium payments from the independent truckers' income to pay for the drivers' certificates. Swift acted as an agent of Ace, collecting premiums, notifying Ace of claims and coordinating the initial medical care needed by injured truckers.

11.  Independent truckers, like Baca, did not receive a certificate or an explanation of coverage after they paid for the coverage. Baca received an enrollment form that explained the basic benefits under the certificate. The enrollment form makes no mention of the requirement that Baca be eligible for Social Security disability benefits to be eligible for Permanent Total Disability benefits.

12.  The enrollment form was the only representation of the policy given to Baca prior to her injury.

13.  In 2012, Baca was required to pay for two separate occupational accident insurance policies from Ace, and the payments were deducted by Swift from her income. The occupational accident policies provide medical and lost income benefits for drivers who become disabled.

2

14.     Baca was physically injured on or about November 4, 2012, while hitching a trailer to her tractor as part of her work duties.

15.     Baca was injured on a Sunday and reported her injury to the Swift Transportation dispatcher that day.

16.     Swift made the initial injury notification to Ace, and Ace or Swift directed Baca to return to Albuquerque before receiving treatment.

17.     Ace and GB have chosen the physicians Baca has seen for treatment of the medical conditions related to the November 4, 2012 injury.

18.     Ace or Swift delayed treatment of Baca, insisting she return to Albuquerque and told her not to go to the emergency room on the day she was injured, and the following week, despite her request to go to an emergency room.

19.     Baca applied for disability and medical benefits under the terms of her certificates. Baca asked for all benefits payable to her.

20.     Baca became disabled as a result of the injuries suffered on November 4, 2012.

21.     Baca has cooperated with Ace and GB, and complied with the requests made by Ace and GB for information and medical examination.

22.     Those requests include going to Concentra Medical Center, attending an Independent Medical Examination ("IME"), going to the USA Pain clinic, working with assigned medical care managers, seeing other medical providers chosen by GB and Ace, and visiting a psychologist chosen by GB and Ace.

23.     Ace wrote the terms and conditions in the certificates, and GB is aware of the terms and conditions of the certificates.

24.     GB has administered the claim handling for Baca and is knowledgeable about the terms and conditions of the certificates.

25.     The certificates provide for payment of a daily income benefit amount when Baca is disabled, and the benefits are $100 per day, each day of the month for the first two years.

26.     Ace and GB have not paid the full amount of income benefit owed to Baca, and have often delayed payment of benefits (more than 20 separate occasions).

27.     Ace and GB are aware that Baca's disability will not end in the near future, but they refused to pay Baca a monthly check for temporary disability benefits, except for one

3

occasion.

28.     GB had the ability to pay on a monthly basis, but chose to continue to make payments weekly.

29.     The delays in payment and the benefits not being paid caused hardship for Baca.

30.     Baca has complained to GB and Ace about the late payments, but the delays in getting payments to Baca continued over time.

31.     Baca cooperated with the request from defendants that she attend a medical examination (IME) by a consulting physician that was not treating her in August 2013.

32.     The examining physician hired by defendants recommended Baca visit a psychologist and receive ongoing counseling. Richey, a medical case manager, began working with Baca after the IME, and coordinated treatment for Baca.

33.     Baca was directed to a psychologist chosen by Ace, GB and Richey at a date and time set by GB and Richey. Richey assured Baca that Ace and GB would make payment for the services provided by the psychologist.

34.     Baca had the understanding that defendants would pay for the treatment with the psychologist under the terms of the certificate, and that the visit had been pre-approved.

35.     Richey scheduled and attended the appointment with the psychologist.

36.     Richey told Baca that she was required to comply with the treatment recommendations by the IME doctor retained by GB and Ace.

37.     Prior to the visit with the psychologist, Richey told Baca that Ace and GB would pay for the treatment recommended by the IME doctor, and that he would make sure the care was received.

38.     Neither GB nor Ace paid for the psychologist visit.

39.     Baca could not afford to follow up with the counseling sessions on her own.

40.     Ace and GB knew that Baca could not afford any follow up sessions.

41.     Baca has not received the psychological care she needed to treat the physical injuries suffered on November 4, 2012.

42.     Defendants have refused to pay the psychologist, and Richey told Baca that Ace and GB refused to approve further payment for future psychological services.

43.     Baca has been contacted by the psychologist's office to make payment since defendants

have refused to pay the bill.

44.   Baca would not have gone to see the psychologist without pre-approval because she could not afford the expense.

45.   Ace and GB have chosen the treating physicians for Baca, and according to Richey, would be making arrangements for Baca to get the care recommended in the IME report.

46.   The treating physicians chosen by Ace and GB have prescribed pain medicine and topical pain cream to treat Baca's physical injuries.

47.   Baca has submitted the prescriptions to pharmacies, and notified GB of the prescriptions submitted.

48.   At times, Ace and GB have claimed that prescriptions had not been submitted to them for approval.

49.   Ace and GB received communications from doctors, the case manager, the pharmacies, and Baca, indicating insurance approval was needed for treatments and prescriptions.

50.   Neither Ace nor GB approved many of the prescriptions made by the medical providers they chose.

51.   A physician has recommended physical therapy to treat Baca's related neurological problems.

52.   Ace and GB have not approved some of the physical therapy recommended by the doctor they chose, and did not coordinate the care for Baca.

53.   A referral for hyperbaric oxygen therapy was made for Baca by GB and Ace's treating physicians.

54.   Defendants have denied requests for benefits for the hyperbaric oxygen therapy.

55.   The denial of prescriptions and care by Ace and GB has resulted in Baca's condition getting worse.

56.   Nerve blocks recommended by the IME report have not been approved or paid for by Ace or GB.  The care has not been coordinated by GB or Ace, or their medical case managers.

57.   Baca's injuries required early intervention and aggressive treatment that she did not receive, resulting in permanent damage.

58.   Ace and GB maintained strict control over Baca's medical care.

59. By controlling the medical physicians, the treatment, and the medication that Baca has received, Ace and GB have further contributed to the damages suffered by Baca, and Baca has, more likely than not, lost her chance at a successful recovery.

60. On August 6, 2014 Baca requested a copy of her claim file from GB.

61. GB responded on August 6, 2014 and refused to provide a copy of parts of the file that were not medical records.

62. GB told Baca that it would not give her a copy of her file because the records were "part of our (GB's) work product."

63. In August, GB told Baca that her medical benefits would only be paid for two years.

64. GB did not tell Baca about the language in the certificate allowing for medical benefits to be provided after the end of two years.

65. In August 2014 Ace and GB hired a second case manager, Anita Kelly ("Kelly").

66. Kelly told Baca that she would explain how the certificate worked, and went with Baca to a medical appointment.

67. Kelly did not coordinate all the additional care needed by Baca.

68. Kelly had not read the certificate, and just forwarded some explanations provided by GB to Kelly.

69. Ace and GB have not provided Baca with explanations for most of the denials of medical benefits requested, or the reasons why the recommended treatment has not been scheduled and provided.

70. Baca could not understand the reasons for denials of benefits when GB refused to send the parts of the file that were not medical records.

71. GB and Ace only selectively and on few occasions told Baca the reasons they have denied medical benefits to her and never made specific reference to policy language until two years after her injury when both her medical and disability benefits were stopped altogether.

72. At the end of the first two years, GB and Ace have denied medical benefits and explained that the reason for denial is the lapse of two years.

73. The certificate says that the medical benefits are to be paid for the first two years, and that after the first two years the medical benefits are to be paid for treatment as long as

6

Baca is receiving treatment related to the injuries suffered on November 4, 2012.

74.   Baca needs additional medical care for injuries suffered on November 4, 2012.  The care is for medical problems that have continued and are related to her original injury.

75.   The certificate indicates that the disability benefits will be paid until the injured beneficiary turns sixty-five (65) or until that person dies.

76.   The certificate provides disability income benefits for the first two years under a temporary disability benefit provision.

77.   After two years, the certificate says that Baca must be approved for Social Security disability benefits prior to getting permanent disability benefits from Ace.

78.   A primary purpose of the certificate is to provide disability income benefits when the disability is related to the injuries sustained by Baca on November 4, 2012.

79.   A primary purpose of the medical benefits provisions of the certificate is to pay for medical care related to injuries sustained by Baca on November 4, 2012.

80.   Ace has failed to honor the terms of its contract and has repudiated the whole contract with respect to ongoing medical benefits and permanent disability benefits as will be further developed herein.

81.   Ace and GB construed ambiguous policy language in favor of non-coverage and failed to balance their interests with Baca's interests when deciding whether to pay benefits.

82.   Public Policy dictates that a party to an insurance contract cannot rely on un-disclosed pre-conditions as a bar to benefits. According to the certificate Baca was required to apply for Social Security disability ("SSDI") benefits in order to receive permanent disability benefits.

83.   The enrollment form for one certificate states that the certificate holder will receive $3010 per month in permanent disability benefits, and makes no reference to a requirement that a certificate holder receive SSDI in order to receive permanent disability benefits.

84.   Baca was denied SSDI because she had not accrued the necessary number of credits by paying in minimum amounts over the last decade to ensure her eligibility for her contractual benefits.

85.   Ace failed to provide Baca with a copy of the certificates while she was paying premiums

7

for many years.  Ace did not communicate to Baca that she would be required to receive benefits from Social Security to be eligible to receive permanent disability income benefits after the first two years.

86.     A party to an insurance contract cannot deny benefits when it has not disclosed important benefit qualification conditions.

87.     Ace has repudiated this policy, indicating that Ace will not comply with the certificates' terms.  Ace has stated it will not pay for any additional medical benefits because a two year limit has expired, and will not pay any additional disability income benefits because Baca does not qualify for Social Security disability income.

88.     The policy certificates contain ambiguous language.  All ambiguous provisions are to be construed in favor of Baca.

## COUNT I
## BREACH OF CONTRACT

89.     Plaintiff incorporates all paragraphs of this Complaint into Count I as if fully set forth herein.

90.     Baca paid for two separate certificates underwritten by Ace.

91.     The certificates sold by Ace to Baca through Swift are written insurance contracts.

92.     Ace and GB breached the contract with Baca, by refusing to pay medical benefits after November 12, 2014 despite certificate provisions indicating that she is entitled.  The purpose of the certificates is to provide medical and income benefits to the disabled insured.

93.     Ace wrote the terms of the certificates.

94.     In every insurance contract in the State of New Mexico there exists an implied covenant of good faith and fair dealing.

95.     The insurance contract sold to Baca, a New Mexico resident, must comply with the insurance laws of the State of New Mexico, including the public policy of New Mexico.

96.     GB administered the certificates and stopped payment of benefits owed to Baca.

97.     Ace is responsible for the administration of the policy by GB.

98.     Ace breached the covenant of good faith and fair dealing owed to Baca.

8

99.    Baca is an intended third-party beneficiary of any agreement made between Ace and GB for the administration of the certificates.

100.   Ace is liable for the actions taken by GB that violate the rights of Baca.

101.   Other than being injured and unable to work, Baca was unaware of any conditions precedent to receiving benefits under both certificates.

102.   Prior to being injured, Baca did not receive certificates showing her that she was required to participate in the Social Security disability system to receive disability benefits after two years from the date of disabling injuries.

103.   The certificates show Swift as the policyholder and "Certain Independent" drivers as intended insureds.

104.   Ace has repudiated the terms of the contract for disability benefits by denying Baca permanent disability payments because she does not qualify for Social Security disability (but not on any medical grounds).

105.   The contract, as written, requires an insured to pay into Social Security as a requirement to receive permanent disability benefits.

106.   After November 2014, Ace has repudiated the medical benefits portion of the contract by refusing to pay future medical benefits for medical care related to the injuries sustained on November 4, 2012.  The certificate provides that Ace will pay medical benefits after the first two years if Baca is under the ongoing care of a doctor for a medical condition related to the initial injury.

107.   Ace has paid disability income benefits under only one of the two certificates.

108.   The failure to pay disability benefits under the second certificate is made in bad faith and is a breach of that contract.

109.   The system of requiring drivers to pay for more than one certificate and limiting benefits to only one daily income benefit violated the duty to act in good faith and fair dealing.

110.   As a direct and proximate result of the breach of contract and the breach of the covenant of good faith and fair dealing, Baca has incurred damages.

## COUNT II
## VIOLATIONS OF STATUTORY INSURANCE AND COMMON LAW BAD FAITH

9

111.   Plaintiff incorporates all the paragraphs of this Complaint into Count II as if fully set forth herein.

112.   The relationship between an insured and an insurance company is a special relationship.

113.   The relationship between an insured like Baca and an insurance company's administrator is a special relationship.

114.   Ace and GB have a duty to fairly and reasonably investigate the claims of an insured, and failure to do so does not permit them to deny a claim due to lack of information or one-sided information.

115.   Ace and GB cannot misrepresent facts or certificate provisions and an insurer has an affirmative duty to disclose benefits and coverages that may apply to a claim.

116.   Ace cannot receive premiums for two certificates, and then only pay disability benefits under one certificate.

117.   The actions of Ace and GB constitute unfair insurance trade practices and violations of the common law of the State of New Mexico by acting only in its own self-interest and with reckless disregard for Baca's rights.

118.   Ace and GB should have administered the certificates so as to continue making income payments to Baca because Ace and GB have no evidence that Baca can perform any occupation.

119.   Ace and GB sent Baca to an IME doctor that GB chose, required Baca to comply with the IME doctor's treatment recommendations, and hired a case manager to ensure Baca was complying with the treatment recommendations.

120.   Then Ace and GB unreasonably ignored the treatment recommendations, denied certain medical benefits that were recommended, and failed to coordinate the care needed by Baca.

121.   Ace and GB denied Baca permanent disability benefits on the grounds that she was denied SSDI benefits.

   a.   This denial was not based upon medical science or Baca's ability to work, but completely upon an undisclosed certificate provision Baca could not have known of because she never received the certificates prior to being injured.

   b.   Baca never received a certificate of coverage from Ace, despite having paid for several certificates: a breach of the insurer's duty to communicate and provide

10

coverage information to its insured.

c.   Baca never received any benefit from the second certificate she was required to purchase, without any explanation by Ace or GB as to why.

d.   Ace and GB did not provide the necessary instructions and assistance to Baca to ensure she could comply with the certificate terms and, prior to her claim, never provided the policy to Baca to make her aware of the certificate terms.

e.   The failure to provide a copy of the certificate is one way to limit benefits to the independent truckers.

122.   Ace and GB should have performed a reasonable investigation of Baca's permanent disability status, but instead relied on SSDI's non-medical determination as grounds to deny certificate income benefits.

123.   Ace and GB failed to conduct an investigation into Baca's permanent disability status after the two years of temporary disability ended.

124.   Ace and GB have a good faith obligation to construe any ambiguous policy provision in a way that favors Baca.

125.   Ace's policy should be strictly construed against it.

126.   Ace and GB seldom provided an explanation of benefits to Baca for the denial of medical services until after two years had elapsed, and then only relied on ambiguous certificate language denying coverage for psychological injury in denying medication prescribed by Baca's doctors.

127.   Ace and GB know how important the benefits of the policy are to an insured who becomes disabled.

128.   Ace and GB should have considered Baca's actual employment prospects before denying her total permanent disability benefits.

129.   Ace and GB payment of benefits does not relieve it of any bad faith conducted in the handling of the claim.

130.   Ace and GB have denied Baca benefits and have compelled her to bring suit, thus fixing the rights of the parties at the time of filing this action.

131.   Ace and GB cannot rely on reasons created or discovered after suit is filed to justify its prior conduct.

132.   Ace and GB can only rely on the reasons for the denial of benefit communicated to Baca.

11

133.   Ace failed to pay disability benefits owed under a second certificate bought by Baca.

134.   Ace provided only an enrollment form upon the initial purchase of the first certificate and nothing for the subsequent policy.

135.   The enrollment form provided by Ace made no mention of eligibility for social security disability benefits as a precondition to receiving long term disability benefits from Ace.

136.   The enrollment form provided by Ace also indicates the maximum amount of disability benefits will only be reduced by other "income benefits".

137.   By omitting the necessary precondition of social security eligibility, Ace falsely represented the terms of the policy Baca was purchasing.

138.   By reducing Baca's disability payments to nothing, Ace is violating the only terms of the contract Baca was aware of at the time of purchase: that the maximum benefits would only be reduced by other "income benefits" and not be contingent upon receipt of SSDI.

139.   Ace and GB unreasonably, willfully, and recklessly violated the New Mexico Unfair Insurance Trade Practices Act, §§ 59A-16-1 et seq. N.M.S.A. 1978 and New Mexico common law.

140.   Upon information and belief, Ace knew of the representations made by GB to claimants like Baca, and that many such representations were false.

141.   Ace is liable for the actions of GB, its agent, in violation of New Mexico law.

142.   As a direct and proximate result of Defendants' violation of the New Mexico Insurance law and common law bad faith, Baca has incurred damages.

## COUNT III
## VIOLATION OF UNFAIR PRACTICES ACT

143.   Plaintiff incorporates all the paragraphs of this Complaint into Count III as if fully set forth herein.

144.   Ace and Swift led Baca to believe she would receive benefits for all the medical and income benefits she was entitled to if she was injured and could not work.

145.   Ace and GB have violated the Unfair Practices Act by:

   a.   Taking advantage of Baca's lack of knowledge, ability, and experience.

   b.   Selling the certificates to Baca that would not supply benefits under the terms of the

certificates and therefore engaging in an unfair and deceptive trade practice.

c.   Distributing enrollment forms that mislead Baca about the terms and conditions of the certificate sold to her.

d.   Forcing Baca to purchase more than one certificate even though Ace intended to pay benefits of only one certificate.

e.   Not paying any benefits on the second certificate for which Baca paid premiums for years.

f.   Engaging in unconscionable trade practices by failing to provide Baca with a copy of the certificate at the time of sale.

g.   Ace has failed to deliver the quality of product that Baca believed she would receive.

h.   Ace has failed to provide any benefits from the second certificate.

i.   Ace and GB denied payment to Baca for medical costs recommended by the medical providers that Ace and GB picked; Ace and GB hired a case manager to ensure Baca complied with the IME doctor's treatment recommendations, but then ignored the recommendations and refused to pay; Ace and GB repudiated the contract for medical benefits by denying payment after the two year time-period expired despite Baca still being under the care of the doctors for the same injuries.

j.   Ace paid disability benefits on one certificate only; prior to being injured, Ace never informed Baca she had to be eligible to receive Social Security disability benefits to receive disability benefits after two years from the date of injury. Ace and GB unreasonably stopped paying benefits based on the SSDI determination that was not related to Baca's physical condition, but the lack of payment into the Social Security system over the last decade. Ace repudiated the contract for disability benefits by refusing to pay Baca.

k.   Ace and GB's actions and decisions caused the breach of the unfair trade practices. GB acted on Ace's behalf, and made decisions that resulted in Baca receiving less in benefits than she was entitled to receive.

l.   Ace and GB have willfully engaged in unfair, deceptive, and unconscionable practices.

146.   As a direct and proximate result of Defendants' violation of the New Mexico Unfair

Practices Act, Baca has incurred damages.

## COUNT IV
## MISREPRESENTATION BY MICHAEL RICHEY AND GENEX

147. Plaintiff incorporates all the paragraphs of this Complaint into Count IV as if fully set forth herein.

148. At all times material hereto, Defendant Richey was an employee of Genex, and an agent of Ace and GB.  Genex was an agent of Ace and GB.

149. Baca attended an IME ordered by GB on behalf of Ace on or about August 9, 2013, with a provider chosen by GB.

150. Dr. Vichick of New Mexico Orthopaedics, the doctor chosen by GB, performed the IME and provided a report detailing a plan of treatment and indicated Baca was unable to perform her work as a tractor-trailer operator and would remain unable to do so for the foreseeable future.

151. Dr. Vichick recommended as a plan of treatment that:

   a. Baca receive pain blocks;

   b. Baca's over-the-counter medications continue;

   c. Baca be referred to a certified pain specialist;

   d. Baca be referred to a hand specialist for fabrication of a custom splint;

   e. Baca continue hand therapy;

   f. Baca attend psychological evaluation and counseling;

   g. Baca receive trial pain blocks in the radial nerve of her forearm;

   h. Possible surgical intervention be considered.

152. Genex and Richey informed Baca that he was hired as a medical case manager to ensure Dr. Vichick's recommended plan of treatment was provided to Baca and complied with by Baca.

153. Richey told Baca that he would make sure she received the medical benefits needed to battle her injuries.

154. Genex and Richey failed to help carry out the plan.  It took several months to set up a

psychological appointment, and Baca was not directed to appropriate doctors to receive the care recommended by Dr. Vichick.

155. Richey misrepresented his role to Baca, telling her he was going to help her to obtain the medical benefits that she needed.

156. Baca relied on the representations of Genex and Richey.

157. Richey told Baca that she needed approval of treatment before getting medical appointments and prescriptions.

158. Genex and Richey failed to help Baca obtain the benefits promised and Baca did not receive much of the IME recommended treatment.

159. Baca was told that Ace and GB would not pay the psychologist after Richey told her that the visit would be paid for by Ace and GB.

160. Baca never received the splint from the hand specialist, over-the-counter pain medications previously approved and paid for, hand therapy, ongoing counseling, or surgical intervention.

161. Baca also relied on Richey's misrepresentations by attending an evaluation with a psychologist setup by GB and Richey, for which Ace and GB subsequently refused to pay. Baca could not afford continued counseling with a psychologist as ordered by Dr. Vichick.

162. Ace and GB refused to pay for any further psychological treatment by relying on ambiguous policy language that prohibits benefits for psychological injury being paid and contrary to Ace and GB's own actions in setting up the appointment and insisting that she attend.

163. Baca suffered from a physical injury that required psychological treatment, and therefore should have been covered under the certificate.

164. Genex, Richey, Ace and GB knew that Baca could not afford continued counseling with a psychologist as recommended by Dr. Vichick.

165. Richey misrepresented the certificate terms and did not explain any of the denial of benefits, in writing or otherwise. Richey told Baca that certain medically needed services and prescriptions were not approved.

166. Ace and GB's hiring of Richey caused delay for Baca when she needed medical care.

15

167.   As a direct and proximate cause of Richey's misrepresentations and delay in receiving needed medical treatment, Baca incurred damages.

## COUNT V
## MISRPRESENTATION BY ACE

168.   Plaintiff incorporates all the paragraphs of this Complaint into Count V as if fully set forth herein.

169.   Baca paid Ace for two separate and distinct certificates for disability coverage with the expectation that she would receive the benefit of both certificates.

170.   Baca only had an enrollment form to notify her of her duties and rights under the certificates she paid for during her tenure at Swift.

171.   The enrollment form indicates benefits will be paid less income-related benefits and makes no mention of other disability-related benefits or SSDI eligibility requirements.

172.   The enrollment form makes no mention of any eligibility requirements like social security credits being a pre-requisite for permanent disability benefits—a critical omission given Ace's complete denial of benefits on those grounds alone.

173.   Ace knew Baca paid for two certificates.

174.   Baca made a claim for benefits, expecting to receive all the benefits from the certificates she paid premiums for.

175.   Baca understood that she would receive benefits from the certificates if she was injured and could not work.

176.   Ace never paid any disability benefits under one of the certificates.

177.   Ace intentionally did not process a claim on the second certificate.

178.   Baca was induced to believe she would be covered by both of the certificates she paid for.

179.   Ace failed to tell Baca that Ace would only pay under one certificate if Baca became disabled.

180.   A misrepresentation may be based on an omission, and Ace has failed to process Baca's benefits under the second certificate.

181.   The payment of two premiums created the expectation that disability income benefits

16

would be paid under both certificates.

182. Another omission was made with regard to medical benefits. Ace told Baca of a deadline of two years for medical benefits, that no medical benefits are available under the certificate more than two years after her injury.

183. Reading the enrollment form, Baca expected to receive medical benefits that would be provided as long as she was unable to return to work. The enrollment form for the certificates indicates that there is a $1,000,000 medical/dental benefit, and makes no mention of a two year limit.

184. Baca received a copy of the certificate after she was injured.

185. Even after delivery of the certificate, Ace and GB notified Baca of a two year limit of medical benefits.

186. Through GB, Ace told Baca that her medical benefits would end in November 2014.

187. Through Kelly, Ace and GB told Baca that her medical benefits would end in November 2014.

188. On information and belief, GB did not show Kelly the language of the certificate, and omitted telling Kelly about the contract provision extending medical benefits past two years.

189. Ace and GB clearly have shown that they intended to deny benefits to Baca in direct contradiction to the language of the certificate.

190. Ace has clearly shown that it intended to not honor the representations made in the enrollment form.

191. There is no reason to sell a second certificate to Baca if she could only receive the benefits from one certificate.

192. The misrepresentations through direct statements and omissions were made intentionally by Ace.

193. Baca reasonably relied upon the misrepresentations to her detriment.

194. As a direct and proximate cause of Ace's misrepresentations and the false inducement to enter into a contract, Baca incurred damages.

17

## COUNT VI
## CONTRACTUAL PROVISIONS THAT VIOLATE PUBLIC POLICY
## SHOULD BE REFORMED

195. Plaintiff incorporates all the paragraphs of this Complaint into Count VI as if fully set forth herein.

196. The intent of an accidental disability and dismemberment contract is to provide benefits to age sixty-five (65) or until the death of the beneficiary where permanent disability has been proven.

197. Baca is not able to receive benefits from the Social Security Disability Administration, not because she was not disabled, but because she had not amassed the necessary amount of payment credits over the ten years of work.

198. Ace never informed Baca that she had to qualify for Social Security disability to be eligible to receive permanent disability benefits under the compulsory certificates she paid for.

199. Until she was injured Baca was never provided a copy of the two certificates she paid for and was not provided a certificate until well after she made a claim, creating an impossibility to perform on her part without any notice or ability to conform her actions to ensure her eligibility for benefits.

200. Ace has structured its policy to make Ace a secondary payer to Social Security disability payments in contravention of federal public policy and claims an offset of benefit payments by Ace for any government benefits paid to Baca.

201. Ace has also made eligibility for Social Security disability benefits a necessary precondition for permanent contractual disability benefits—a hidden requirement Baca could not have reasonably contemplated or anticipated at any time before the denial of benefits on that basis.

202. Ace has created an impossibility of performance issue by invoking the determination of an undisclosed, unrelated and foreign process (SSDI benefits) as grounds for denial of contractual benefits.

203. Ace further conditions payment of permanent disability benefits upon a final disability IME, functional capacity evaluation, and vocational evaluation—all required in addition

to the SSDI determination.

204.   Ace has made clear, through communications to Baca, that she would still be denied permanent disability benefits because she does not qualify for Social Security disability.

205.   The policy should be reformed to provide for benefits due to the failure of Ace to disclose important contract terms prior to Baca becoming disabled.

206.   The exclusionary clause excluding permanent disability benefits when a driver does not qualify for Social Security disability is against public policy, especially when not disclosed until after the injury leading to disability.

207.   Public policy requires reformation to prevent manifest injustice. This exclusionary clause should be deleted from the certificate.

## COUNT VII
## DAMAGES, COSTS, & FEES

208.   Plaintiff incorporates all the paragraphs of this Complaint into Count VII as if fully set forth herein.

209.   Plaintiff has incurred the following damages:

a.   Loss of permanent disability income benefits;

b.   Loss of disability benefits from the second certificate;

c.   Loss of medical benefits;

d.   Emotional distress damages, and other compensatory damages;

e.   Compensatory damages for losing the opportunity to aggressively treat her injuries;

f.   Bad faith damages for violation of statutory law and common law;

g.   Unfair practices act damages including treble damages;

h.   Punitive damages as a result of the gross negligent, wanton, reckless and willful conduct of Ace and GB;

i.   Pre-trial and post-trial interest as allowed by law; and

j.   Attorney fees as allowed under §§ 39-2-1, 57-12-10 and 59A-16-30 N.M.S.A. 1978.

**WHEREFORE,** Plaintiff prays that this Court enter judgment against Defendants for the actions described in this Complaint, and for such further relief as is just and proper.

19

Respectfully Submitted:

/s/M.J. Keefe

M.J. Keefe
Keefe & Associates LLC
1400 Central Ave. SE, Suite 2000
Albuquerque, NM
87106 (505) 262-0000
mjkeefe@theabqlawfirm.com

/s/ Josh Eden

Josh E. Eden
Eden Law Office, LLC
1400 Central Ave. SE, Suite 2000
Albuquerque, NM 87106
edenlawoffice@gmail.com

*Attorneys for Plaintiff*

20

| SUMMONS ON FIRST AMENDED COMPLAINT | |
|---|---|
| District Court: FIRST JUDICIAL DISTRICT<br>Santa Fe County, New Mexico<br>Court Address: 225 Montezuma Avenue<br>Post Office Box 2268<br>Santa Fe, New Mexico 87504-2268<br>Court Telephone No.: 505-455-8280 | Case Number: D-101-CV-2015-00010<br><br>Assigned Judge: David K. Thomson |
| JENNIFER BACA,<br><br>    Plaintiff,<br><br>v.<br><br>ACE AMERICAN INSURANCE<br>COMPANY, GALLAGHER<br>BASSETT SERVICES, INC.,<br>GENEX SERVICES, LLC,<br>and MICHAEL RICHEY.<br><br>    Defendants. | Defendants Name:<br><br>Genex Services, LLC<br>c/o C T Corporation System<br>123 East Marcy<br>Santa Fe, NM 87501 |

**TO THE ABOVE NAMED DEFENDANT(S):** Take notice that

**1.** A lawsuit has been filed against you. A copy of the lawsuit is attached. The Court issued this Summons.

**2.** You must respond to this lawsuit in writing. You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons. (The date you are considered served with the Summons is determined by Rule 1-004 NMRA) The Court's address is listed above.

**3.** You must file (in person or by mail) your written response with the Court. When you file your response, you must give or mail a copy to the person who signed the lawsuit.

**4.** If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

**5.** You are entitled to a jury trial in most types of lawsuits. To ask for a jury trial, you must request one in writing and pay a jury fee.

**6.** If you need an interpreter, you must ask for one in writing.

**7.** You may wish to consult a lawyer. You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6066.

1

Dated at Santa Fe, New Mexico, this 2 day of February, 2015.



STEPHEN T. PACHECO
CLERK OF THE DISTRICT COURT

BY: _____
     Deputy

   /s/ M. J. Keefe
M. J. Keefe
Keefe & Associates LLC
1400 Central Ave SE, Ste 2000
Albuquerque, NM 87106
Telephone: 505-262-0000
Facsimile: 505-998-6628
mjkeefe@theabqlawfirm.com
*Attorney for Plaintiff*

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO
RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

# RETURN[1]

STATE OF NEW MEXICO  )
                            ) ss
COUNTY OF _____  )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in _____ county on the _____ day of _____, _____, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

**(check one box and fill in appropriate blanks)**

[ ]     to the defendant _____ *(used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint)*

[ ]     to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA *(used when service is by mail or commercial courier service).*

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

[ ]     to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, *(used when the defendant is not presently at place of abode)* and by mailing by first class mail to the defendant at _____ *(insert defendant's last known mailing address)* a copy of the summons and complaint.

[ ]     to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ *(insert defendant's business address)* and by mailing the summons and complaint by first class mail to the defendant at _____ *(insert defendant's last known mailing address).*

[ ]     to _____, an agent authorized to receive service of process for defendant _____.

[ ]     to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ *(used when defendant is a minor or an incompetent person).*

[ ]     to _____ (*name of person*), _____ , (*title of person authorized to receive service. Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision*).

Fees: _____

_____
Signature of person making service
_____
Title (*if any*)

Subscribed and sworn to before me this _____ day of _____ , _____ [2]

_____
Judge, notary or other officer
authorized to administer oaths
_____
Official title

## USE NOTE

    1.    Unless otherwise ordered by the court, this return is not to be filed with the court prior to service of the summons and complaint on the defendant.

    2.    If service is made by the sheriff or a deputy sheriff of a New Mexico county, the signature of the sheriff or deputy sheriff need not be notarized.

[Adopted effective August 1, 1988; as amended by Supreme Court Order 05-8300-01, effective March 1, 2005; by Supreme Court Order 07-8300-16, effective August 1, 2007; by Supreme Court Order No. 12-8300-026, effective for all cases filed or pending on or after January 7, 2013.]

4

**FIRST JUDICIAL DISTRICT**
**COUNTY OF SANTA FE**
**STATE OF NEW MEXICO**

**JENNIFER BACA,**

     **Plaintiff,**

**v.**                                                            **No. D-101-CV-2015-00010**

**ACE AMERICAN INSURANCE**
**COMPANY, GALLAGHER**
**BASSETT SERVICES, INC.,**
**and MICHAEL RICHEY.**

     **Defendants.**

<u>**ANSWER TO FIRST AMENDED COMPLAINT**</u>

1.     The amount of damages claimed by Plaintiff is not owed because

_____

_____

_____

_____

or

1.     The personal property claimed by Plaintiff should not be turned over to Plaintiff because:

_____

_____

_____

_____

2.     *[If applicable]* Defendant asserts the following counterclaim or set-off against Plaintiff:

_____

_____

_____

_____

3.     Trial by jury is (not) demanded.  (*If Plaintiffs have already demanded trial by jury, as*

*indicated in the complaint, a jury will be provided automatically and you need not fill in
this item.  If Plaintiff has not demanded trial by jury, you may do so here, but if you do
you must pay an additional cost upon filing this answer.)*

4.    An audio recording of the trial is (not) demanded. [*If you do not request an audio
recording, your right to appeal may be limited.*]


Dated _____      Signed _____

                                        _____
                                        Name (print)

                                        _____
                                        Address (print)

                                        _____
                                        City, State and Zip Code (print)

                                        _____
                                        Telephone number

*(This Answer must be filed with the court on or before the date set in the Summons.)*

FIRST JUDICIAL DISTRICT
COUNTY OF SANTA FE
STATE OF NEW MEXICO

JENNIFER BACA,

      Plaintiff,

v.                           No. D-101-CV-2015-00010

ACE AMERICAN INSURANCE
COMPANY, GALLAGHER
BASSETT SERVICES, INC.,
and MICHAEL RICHEY.

      Defendants.


## NOTICE AND RECEIPT OF SUMMONS
## AND FIRST AMENDED COMPLAINT

TO:     GENEX Services, LLC
          c/o C T Corporation System
          Registered Agent
          123 E. Marcy
          Santa Fe, NM 87501

     The enclosed Summons, Original Complaint, First Amended Complaint, Answer form, two copies of this Notice and Receipt of Summons and Complaint and a postage prepaid return envelope are served pursuant to the New Mexico Rules of Civil Procedure.

     You must sign and date the receipt of this form. If you are served on behalf of a corporation, unincorporated association (including a partnership) or other entity, you must indicate under your signature your relationship to that entity.  If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your position or title.

     If you **do not complete and return the form** to the sender within twenty (20) days plus three (3) days for mailing of the date upon which this notice was mailed, you (or the party on whose behalf you are being served) may be required to pay an expenses incurred in serving a Summons and Complaint in any other manner permitted by law.  It must be received by the sender within twenty-three (23) days from the date it was mailed to you.

If you **do complete and return this form,** you (or the party on whose behalf you are being served) must answer the Complaint and file it with the Court within thirty (30) days of the date upon which this notice was mailed, which date appears below.  If you fail to do so, judgment by default may be taken against you for the relief demanded in the Complaint. An answer form has been included with this notice for your use.

A stamped and addressed envelope has been included with this notice.   You may use this envelope to return this form to the sender.

I declare, under penalty of perjury, that the Summons, Complaint, an Answer form, two copies of this Notice and Receipt of Summons and Complaint and a postage prepaid return envelope were mailed on the 3rd day of February, 2015.

Respectfully submitted,

KEEFE & ASSOCIATES LLC

Date of Signature: February 3, 2015

M. J. Keefe
1400 Central SE, Suite 2000
Albuquerque, NM 87106
505-262-0000 Telephone
505-998-6628 Facsimile
mjkeefe@theabqlawfirm.com
*Attorney for Plaintiff*

## RECEIPT OF SUMMONS AND COMPLAINT

I received a copy of the Summons and Complaint in the above-captioned. I understand that a judgment may be entered against me (or the party on whose behalf I received service), if I do not file an answer to the Complaint with the Court within thirty (30) days of the date upon which this notice was mailed to me.

GENEX Services, LLC
c/o C T Corporation System
Registered Agent
123 E. Marcy
Santa Fe, NM 87501

_____

Signature of Defendant, Defendant's
Attorney or Registered Agent for Gallagher Bassett
Services, Inc.

_____

Relationship to entity/authority to receive service of
process

_____

Date of signature

### AFFIDAVIT OF SERVICE

      I declare under penalty of perjury that a copy of the Summons, Complaint, an Answer
form, two copies of this Notice and Receipt of Summons and Complaint, and a postage prepaid
return envelope were served by mail on the following persons or entities on this 3rd day of
February 203rd

           GENEX Services, LLC
           c/o C T Corporation System
           Registered Agent
           123 E. Marcy
           Santa Fe, NM 87501

Date of Signature: February 3, 2015

                                M. J. Keefe
                                **Keefe & Associates LLC**
                                1400 Central SE, Suite 2000
                                Albuquerque, NM 87106
                                505-262-0000 Telephone
                                505-998-6628 Facsimile
                                mjkeefe@theabqlawfirm.com
                                *Attorney for Plaintiff*

STATE OF NEW MEXICO      )
                           ) ss.
COUNTY OF BERNALILLO   )

      Subscribed and sworn to before me this 3rd day of February, 2015, by M.J. Keefe.

                                             Notary Public

My Commission Expires: _10-3-2015_

OFFICIAL SEAL
Jacquelyn R. Lewis
NOTARY PUBLIC - STATE OF NEW MEXICO
My Commission Expires: 10-3-2015

–3–



Keefe & Associates LLC
1400 Central SE, Suite 2000
Albuquerque, NM 87106

Keefe & Associates LLC
1400 Central SE, Suite 2000
Albuquerque, NM 87106



**FIRST JUDICIAL DISTRICT**
**COUNTY OF SANTA FE**
**STATE OF NEW MEXICO**

**JENNIFER BACA,**

> **Plaintiff,**

v,                                          No. **D-101-CV-2015-00010**

**ACE AMERICAN INSURANCE**
**COMPANY, GALLAGHER**
**BASSETT SERVICES, INC.,**
**and MICHAEL RICHEY.**

> **Defendants.**

<u>**NOTICE AND RECEIPT OF SUMMONS**</u>
<u>**AND FIRST AMENDED COMPLAINT**</u>

TO:   GENEX Services, LLC
      c/o C T Corporation System
      Registered Agent
      123 E. Marcy
      Santa Fe, NM 87501

The enclosed Summons, Original Complaint, First Amended Complaint, Answer form, two copies of this Notice and Receipt of Summons and Complaint and a postage prepaid return envelope are served pursuant to the New Mexico Rules of Civil Procedure.

You must sign and date the receipt of this form. If you are served on behalf of a corporation, unincorporated association (including a partnership) or other entity, you must indicate under your signature your relationship to that entity.  If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your position or title.

If you **do not complete and return the form** to the sender within twenty (20) days plus three (3) days for mailing of the date upon which this notice was mailed, you (or the party on whose behalf you are being served) may be required to pay an expenses incurred in serving a Summons and Complaint in any other manner permitted by law.  It must be received by the sender within twenty-three (23) days from the date it was mailed to you.

If you **do complete and return this form,** you (or the party on whose behalf you are being served) must answer the Complaint and file it with the Court within thirty (30) days of the date upon which this notice was mailed, which date appears below.  If you fail to do so, judgment by default may be taken against you for the relief demanded in the Complaint. An answer form has been included with this notice for your use.

A stamped and addressed envelope has been included with this notice.   You may use this envelope to return this form to the sender.

I declare, under penalty of perjury, that the Summons, Complaint, an Answer form, two copies of this Notice and Receipt of Summons and Complaint and a postage prepaid return envelope were mailed on the 3rd day of February, 2015.

Respectfully submitted,

KEEFE & ASSOCIATES LLC

Date of Signature: February 3, 2015

M. J. Keefe
1400 Central SE, Suite 2000
Albuquerque, NM 87106
505-262-0000 Telephone
505-998-6628 Facsimile
mjkeefe@theabqlawfirm.com
*Attorney for Plaintiff*

## RECEIPT OF SUMMONS AND COMPLAINT

I received a copy of the Summons and Complaint in the above-captioned. I understand that a judgment may be entered against me (or the party on whose behalf I received service), if I do not file an answer to the Complaint with the Court within thirty (30) days of the date upon which this notice was mailed to me.

GENEX Services, LLC
c/o C T Corporation System
Registered Agent
123 E. Marcy
Santa Fe, NM 87501

_____

Signature of Defendant, Defendant's
Attorney or Registered Agent for Gallagher Bassett
Services, Inc.


_____

Relationship to entity/authority to receive service of
process


_____

Date of signature

### AFFIDAVIT OF SERVICE

I declare under penalty of perjury that a copy of the Summons, Complaint, an Answer
form, two copies of this Notice and Receipt of Summons and Complaint, and a postage prepaid
return envelope were served by mail on the following persons or entities on this 3rd day of
February 203rd

GENEX Services, LLC
c/o C T Corporation System
Registered Agent
123 E. Marcy
Santa Fe, NM 87501

Date of Signature: February 3, 2015

M. J. Keefe
**Keefe & Associates LLC**
1400 Central SE, Suite 2000
Albuquerque, NM 87106
505-262-0000 Telephone
505-998-6628 Facsimile
mjkeefe@theabqlawfirm.com
*Attorney for Plaintiff*

STATE OF NEW MEXICO        )
                           ) ss.
COUNTY OF BERNALILLO       )

Subscribed and sworn to before me this 3rd day of February, 2015, by M.J. Keefe.

Notary Public

My Commission Expires: _10-3-2015_

OFFICIAL SEAL
Jacquelyn R. Lewis
NOTARY PUBLIC · STATE OF NEW MEXICO
My Commission Expires: 10-3-2015

–3–